**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| IRVIN J. BETCH ET AL., | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. 25-27-BAH |
| NATIONSTAR MORTGAGE, LLC, ET AL., | * | |
| Defendants. | * | |

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

## <u>MEMORANDUM OPINION</u>

Pro se Plaintiffs Irvin J. Betch, Patricia A. Betch, and "Arthur of the family Wittenberg, (*Trustee*)" (together "Plaintiffs") brought suit against eleven defendants, including Nationstar Mortgage LLC, d/b/a Mr. Cooper ("Nationstar") and its Chief Executive Officer ("CEO") Christopher Marshall ("Marshall") (together, the "Nationstar Defendants"); Equifax Information Services LLC ("Equifax"), its CEO Mark Begor ("Begor"), and Executive Vice President ("EVP") and Chief Corporate Development Officer Sunil Bindal ("Bindal") (together, the "Equifax Defendants"); Experian Information Solutions Inc. ("Experian"), the CEO of Experian PLC Brian Cassin ("Cassin"), and Senior Independent Director of Experian PLC Allison Brittain ("Brittain") (together, the "Experian Defendants"); and Trans Union LLC ("Trans Union"), its CEO Christopher Cartwright ("Cartwright"), and EVP and Chief Financial Officer Todd Cello ("Cello") (together, the "Trans Union Defendants") (collectively, "Defendants").[1]　ECF 1 (complaint).

---

[1] The Clerk is directed to correct Experian, Equifax, and Trans Union's names on the docket accordingly.

Plaintiffs bring nine claims arising out of a loan on a residence formerly owned by Plaintiffs in Monkton, Maryland. *Id.*

Pending before the Court are seven motions. First, there are three pending motions to dismiss, *see* ECF 17 (the Trans Union Defendants'); ECF 36 (Brittain and Cassin's); ECF 40 (the Nationstar Defendants'), as well as two motions for "joinder in Trans Union LLC's motion to dismiss," *see* ECF 33 (filed by the Equifax Defendants); ECF 38 (filed by Experian). Second, Plaintiffs have filed two motions, including a motion for summary judgment, ECF 35, and a motion "to strike impertinent matter," for leave to file a surreply, and "for prompt ruling on the pending motions to dismiss," ECF 74. Numerous responses and replies have been filed to the pending motions.[2] Several of the filings include memoranda of law and exhibits.[3] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, the motions to dismiss as well as the motions for joinder are **GRANTED**, Plaintiffs' motion for summary judgment is **DENIED** as moot, and Plaintiffs' motion at ECF 74 is **DENIED**.

## I.    BACKGROUND

On January 3, 2025, Plaintiffs filed the complaint alleging that Irvin and Patricia Betch (the "Betches") "entered into a Consumer Credit Transaction" with Nationstar to "refinance[] their

---

[2] *See* ECF 20 (Plaintiffs' opposition to ECF 17); ECF 34 (Plaintiffs' opposition to ECF 33); ECF 39 (Plaintiffs' opposition to ECF 36); ECF 42 (Plaintiffs' opposition to ECF 40); ECF 44 (Begor, Bindal, Cartwright, Cello, Equifax, and TransUnion's reply regarding ECF 33 and ECF 17); ECF 45 (Brittain, Cassin, and Experian's reply regarding ECF 36); ECF 40 (Marshall and Nationstar's opposition to ECF 35); ECF 49 (Plaintiffs' reply); ECF 51 (Marshall and Nationstar's reply regarding ECF 40); ECF 75 (Begor, Bindal, Cartwright, Cello, Equifax, and Trans Union's opposition to ECF 74); ECF 76 (Marshall and Nationstar's opposition to ECF 74); ECF 78 (Plaintiffs' reply regarding ECF 74).

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

residence" at "3621 Homelot Court, Monkton, Maryland 21111" (the "Property").  ECF 1, at 6–7

¶¶ 22, 24.  Plaintiffs allege that they "made on time monthly payment[s]" on the loan.  *Id.* at 6 ¶

23.  On May 19, 2019, the Betches allege they placed the Property in a trust, naming "Arthur of

the Family Wittenberg" ("Wittenberg") as the trustee.  *Id.* at 7 ¶¶ 24–25.  In July of 2019, the

Betches instructed Wittenberg "to extinguish the debt" with "check and Legal Tender with silver

coins in the amount of $264,040.18."  *Id.* ¶¶ 25–26.  Maryland Judiciary Case Search shows that

the Property was subject to a foreclosure sale, which was ratified by the Circuit Court for Harford

County on November 18, 2021.[4]  After an appeal, judgment for possession of the Property was

granted to the substitute trustees representing Nationstar on February 10, 2022.  *See supra* n.4.

Plaintiffs assert that "[a]lthough [t]ender has been issued in full to extinguish the" debt, Nationstar

"continued to provide false information to" Trans Union, Experian, and Equifax, thereby damaging

the Betches' credit ratings.  ECF 1, at 7 ¶ 27.

The complaint asserts nine causes of action.  Plaintiffs bring all nine claims against the

Nationstar Defendants, including breach of fiduciary duty (Count I); securities fraud (Count II);

violations of various provisions of the Fair Credit Reporting Act ("FCRA") (Counts III, IV, and

V), a violation of the Fair Debt Collection Practices Act , 15 U.S.C. § 1692e ("FDCPA") (Count

VI); a violation of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45(a) (Count VII); a

---

[4] *See Diane Rosenberg, et al. v. Irvin Betch, et al.*, Civ. No. C-12-CV-20-000061 (Cir. Ct. Harford Cty. January 21, 2010), Maryland Judiciary Case Search, http://casesearch.courts.state.md.us/ casesearch/inquirySearch.jis (Under "Search By Case Number," enter case number "C12CV20000061"; then select "Search")) (last visited Feb. 18, 2026).  The Court may take judicial notice of public records when resolving a motion to dismiss.  *See Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) ("In reviewing the dismissal of a complaint under Rule 12(b)(6), we may properly take judicial notice of matters of public record."); *see also Waters v. Randolph*, Civ. No. GLR-17-2960, 2018 WL 337757, at *1 (D. Md. Jan. 9, 2018) (taking judicial notice of facts from Maryland Judiciary Case Search).

violation of 12 U.S.C. § 1431 (Count VIII); and a violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. (Count IX). Plaintiffs also allege that the remaining Defendants violated the FCRA under Counts III (brought against all Defendants) and IV (brought against Nationstar, Equifax, Experian, and Trans Union). *Id.* at 13–18.

Plaintiffs initially failed to file completed summonses for all Defendants. *See* ECF 3 (deficiency notice); ECF 5 (order directing Plaintiffs to submit completed summonses). And before the Clerk issued summonses, Plaintiffs filed four purported affidavits of service, *see* ECFs 6–9, and a motion for entry of default, ECF 10, which was denied, ECF 11.

In March of 2025, Defendants filed their respective motions to dismiss and motions for joinder, *see* ECFs 17, 33, 36, 38, and 40, and Plaintiffs filed a motion for summary judgment, ECF 35. Plaintiffs also filed a surreply which the Clerk returned to them because Plaintiffs failed to request leave to file a surreply. ECF 52. Plaintiffs then submitted correspondence contesting the return of the surreply and asserting that they did file such a motion. *See* ECF 54. The Court reviewed the submission and entered an order affirming that no motion was filed and declined to consider the proposed surreply. *See* ECF 55. Plaintiffs also filed four motions for default and default judgment, *see* ECFs 53, 56, 59, and 67, which were all denied, ECF 73. On January 30, 2026, Plaintiffs filed a motion to strike, for leave to file a surreply, and for prompt ruling on the pending motions to dismiss. ECF 74. All pending motions are now ripe for resolution.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(2)

"[A] Rule 12(b)(2) challenge" to personal jurisdiction "raises an issue for the court to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the

burden of demonstrating personal jurisdiction at every stage following such a challenge." *Id.* "[A] court has broad discretion to determine the procedure that it will follow in resolving a Rule 12(b)(2) motion." *Id.* at 268. "[N]either discovery nor an evidentiary hearing is required in order for the court to resolve a motion under Rule 12(b)(2)." *Jones v. Mut. of Omaha Ins. Co.*, 639 F. Supp. 3d 537, 544 (D. Md. 2022). "When 'the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question.'" *Id.* (quoting *Combs*, 886 F.2d at 676).

"When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a prima facie case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). "This 'prima facie case' analysis resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.* "The court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Aerotek Inc. v. Babcock & Wilcox Solar Energy, Inc.*, Civ. No. JRR-24-177, 2024 WL 4792116, at *2 (D. Md. Nov. 14, 2014) (citing *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196–97 (4th Cir. 2018)). In resolving a motion brought under Rule 12(b)(2), "a court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction," *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (citing *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)).

### B.    Federal Rule of Civil Procedure 12(b)(5)

A defendant may move for dismissal for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5). "Once service has been contested, the plaintiff bears the burden of establishing

the validity of service pursuant to Rule 4." *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006) (citing *Norlock v. City of Garland*, 768 F.2d 654, 656 (5th Cir. 1985)). "Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the court." *Id.* (citing *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963); *Armco, Inc. v. Penrod–Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)).

C.    **Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted."  In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

D.    **Liberal Construction**

Because Plaintiffs brings this suit pro se, the Court must liberally construe their pleadings, holding them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This leniency has its limits, though. "A court may not construct the plaintiff's legal arguments for him, nor is a district court required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Runge v. Barton*, No. CIVA 6:08-0231-GRA, 2009 WL 3245471, at *1 (D.S.C. Oct. 2, 2009) (first citing *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993); and then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)), *aff'd*, 368 F. App'x 361 (4th Cir. 2010).

III.    **ANALYSIS**

The Court first addresses Defendants' motions to dismiss, and motions for joinder where relevant, and then turns to Plaintiffs' pending motions.

A.    **The Trans Union Defendants' Motion to Dismiss (and Motions for Joinder)**

The Trans Union Defendants have moved to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6) and assert that 1) the FCRA claims against Cartwright and Cello are not actionable, and 2) Plaintiffs fail to plead any inaccuracy in Trans Union's reporting. ECF 17-1, at 2. The Trans Union Defendants also request an award of costs and fees based on their allegation that Plaintiffs filed the complaint in bad faith. The Equifax Defendants and Experian filed motions for joinder to "join[], adopt[], and incorporate by reference" the Trans Union Defendants' motion to dismiss.[5] ECF 33, at 2; ECF 38, at 2. The Court will grant the motions for

---

[5] Plaintiffs timely filed an opposition to the Equifax Defendants' motion for joinder, *see* ECF 34, but not Experian's. The arguments in Plaintiffs' oppositions to the Equifax Defendants' and Trans Union Defendants' motions are identical. *See* ECF 20; ECF 34. However, in Plaintiffs' motion to strike, filed ten months after the opposition briefs, Plaintiffs raise for the first time an argument that the Equifax Defendants' and Experian's joinder motions are "procedurally defective." *See* ECF 74, at 11. The Local Rules provide that "all memoranda in opposition to a motion shall be

joinder and acknowledges that the Equifax Defendants and Experian adopt the arguments advanced by the Trans Union Defendants. *See Rybas v. Riverview Hotel Corp.*, 21 F. Supp. 3d 548, 551 n.2 (D. Md. 2014) (analyzing defendants' adopted arguments); *see also United States v. Chester*, No. 13 CR 00774, 2017 WL 3394746, at *3 (N.D. Ill. Aug. 8, 2017) ("It is also permissible for a defendant to adopt a relevant argument made by another defendant."), *aff'd sub nom. United States v. Brown*, 973 F.3d 667 (7th Cir. 2020). The Court treats each argument made by the Trans Union Defendants as also being made by the Equifax Defendants and Experian, as applicable. Accordingly, the Court hereinafter refers to the Trans Union, Equifax, and Experian Defendants as the consumer reporting agencies ("CRAs") or the "CRA Defendants."

The only claims brought against the CRA Defendants are for violation of § 1681e(b) and § 1681i of the FCRA.[6] *See* ECF 1, at 15; *id.* at 21 ("The credit reporting agencies failed to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, violating 15 U.S.C. 1681e(b)."). After providing an overview of the provisions of the FCRA at issue, the Court addresses the viability of the claims brought against Cartwright, Cello, Begor, and Bindal, and then turns to those brought against the CRA Defendants.

---

filed within fourteen (14) days of the service of the motion." Loc. R. 105.2(a) (D. Md. 2025). As Plaintiffs' argument opposing the joinder motions was filed long after the fourteen-day deadline, the Court will not consider it.

[6] Plaintiffs also cite §§ 1681s-2(a)(3) and 1681s(a)(1) as bases for their FCRA claims. *See* ECF 1, at 14–16. But neither of these sections provide a private cause of action. *See Saunders*, 526 F.3d at 149 ("FCRA explicitly bars private suits for violations of § 1681s-2(a), but consumers can still bring private suits for violations of § 1681s-2(b)." (citing 15 U.S.C. § 1681s-2(c)); *see also* 15 U.S.C. § 1681s (authorizing the Federal Trade Commission to enforce the FCRA); *Derry v. Chase Bank*, Civ. No. 09-2640-PHX-SRB, 2010 WL 11519171, at *4 (D. Ariz. Apr. 13, 2010) ("Section 1681s addresses administrative enforcement of the FCRA, not a private right of action.").

### 1. Fair Credit Reporting Act

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (first citing 84 Stat. 1128, 15 U.S.C. § 1681; and then citing *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001)). "To this end, FCRA requires [consumer reporting agencies] to follow procedures in reporting consumer credit information that both 'meet[] the needs of commerce' and are 'fair and equitable to the consumer.'" *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 147 (4th Cir. 2008) (alteration in *Saunders* (quoting 15 U.S.C. § 1681(b)). A consumer reporting agency or "CRA" is defined by the FCRA as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

Sections 1681e and 1681i of the FCRA apply to CRAs. *See Saunders*, 526 F.3d at 148 (explaining CRAs have a duty "to report accurately pursuant to § 1681e"). To state a claim under § 1681e, a plaintiff must show that "(1) the consumer report contains inaccurate information and (2) the [CRA] did not follow reasonable procedures to assure maximum possible accuracy." *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001). "To state a § 1681i claim, [a p]laintiff must allege '(1) that [the plaintiff] disputed the accuracy of an item in [the plaintiff's] credit file; (2) the [CRA] failed to conduct a reasonable reinvestigation; and (3) that a reasonable reinvestigation by the [CRA] could have uncovered the inaccuracy.'" *Simmons v. TransUnion, LLC*, 712 F. Supp. 3d 629, 635 (D. Md. 2024) (quoting *Alston v. Branch Banking & Tr. Co.*, Civ. No. GJH-15-3100, 2016 WL 4521651, at *10 (D. Md. Aug. 26, 2016) (alterations

9

modified)).  Implicit in the elements is an understanding that the incorrectly reported information is, in fact, inaccurate or incomplete.  *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010) ("In light of the parallel obligations imposed on CRAs and furnishers—and the narrow purpose of the amendments to the FCRA—that same rationale supports requiring a showing of actual inaccuracy in suits against furnishers."); *Queen v. LVNV Funding, LLC*, Civ. No. LKG-24-2237, 2025 WL 2532710, at *4 (D. Md. Sept. 3, 2025) ("Courts distinguish factual inaccuracies—which may support a claim under the FCRA— from legal disputes over the validity of a debt, which do not state a claim under the statute.").

        2.  <u>Plaintiffs do not state a viable claim for violation of the FCRA against Cartwright, Cello, Begor, and Bindal.</u>

The only claim brought against Cartwright, Cello, Begor, and Bindal is for alleged violation of the FCRA under Count III.  *See* ECF 1, at 13.  Plaintiffs allege that these four defendants, in their official capacities, continue to report inaccurate information about the debt on the property after Plaintiffs "provided proof of payment to show that the information about the debt on the consumer[] report is inaccurate." *Id.* at 14.

The CRAs argue that Cartwright, Cello, Begor, and Bindal cannot be held liable under the FCRA based on their positions as officers at Trans Union and Equifax, and cite *Parker v. Cartwright*, Civ. No. JRR-23-1628, 2024 WL 622077 (D. Md. Feb. 13, 2024), in support of this assertion.  ECF 17-1, at 4–5.  In *Parker*, Judge Rubin examined whether a defendant, the CEO of a CRA,[7] could be held liable under the FCRA.  *Parker*, 2024 WL 622077, at *7–8.  Judge Rubin explained that "generally, individual defendants cannot be held liable solely because they are chief

---

[7] In fact, the complaint in *Parker* was brought by a pro se plaintiff against two of the named defendants in this action—Cartwright and Cassin.  *Parker*, 2024 WL 622077, at *1.  There, Judge Rubin found that the Court lacked personal jurisdiction over Cassin and analyzed the viability of the plaintiff's FCRA claims only as to Cartwright.  *Id.* at *7–9.

executive officers for the corporate defendants.  Instead, cases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the guiding spirit behind the wrongful conduct . . . or the central figure in the challenged corporate activity." *Id.* at 7 (citation modified) (quoting *Estrada v. Equifax Information Services LLC*, No. CV-21-01704-PHX-SMB, 2022 WL 2705835, at *4–5 (D. Ariz. July 12, 2022)).  Judge Rubin found *Estrada* persuasive because, as in *Parker*, the *Estrada* plaintiff's § 1681e claim against the individual corporate officer defendant was dismissed because "nothing in [the complaint] suggests that [the CEO defendant] took any action in his personal capacity or that [he] is a CRA." *Id.* at 8– 9 (citing *Estrada*, 2022 WL 2705835, at *4–5).

Here, Plaintiffs do not allege that Cartwright, Cello, Begor, and Bindal are themselves CRAs under the FCRA, but instead allege that as officers they "play[] an active role in the management" of their companies, ECF 1, at 4–5, and "had the authority to control and direct the debt collecting information reporting activities of their prospective [sic] entities, or [ ] participated in the misrepresentations and other misconduct of said prospective [sic] entities." *Id.* at 12. Plaintiffs also restate the same allegation in opposing dismissal of the claims against these four defendants.  *See* ECF 20, at 2; ECF 34, at 2.  However, Plaintiffs' claims under § 1681e and § 1681i against these four officer defendants fail for the same reason as the claim in *Parker*— "nothing in [the complaint] suggests that Cartwright[, Cello, Begor, and Bindal] took any action in [their] personal capacity or that [they are] a CRA." *Parker*, 2024 WL 622077, at *8.  The general allegations made against these defendants, namely that they "play an active role in the management" of their respective companies, ECF 1, at 4–5, fail to allege that any were the "guiding spirit" behind any wrongful conduct or "the central figure in the challenged corporate activity."

*Parker*, 2024 WL 622077, at *7.  Accordingly, Plaintiffs' claims against Cartwright, Cello, Begor, and Bindal must be dismissed.[8]

### 3. <u>Plaintiffs' FCRA claims against the CRA Defendants also fail.</u>

The CRA Defendants are named under Counts III, IV, and V for violations of the FCRA. *See* ECF 1, at 13–16.  Plaintiffs, however, fail to allege sufficient facts to state a plausible claim against the CRA Defendants under § 1681e or § 1681i of the FCRA.

Plaintiffs' § 1681e claim fails because while Plaintiffs seemingly allege that the information in their credit report was inaccurate,[9] *see* ECF 1, at 14 ("Equifax, Experian, and TransUnion w[ere] notified by the consumer . . . that the specific information was inaccurate . . . and the information was, in fact, inaccurate."), they fail to allege that any of the three CRAs failed to follow reasonable procedures to assure maximum possible accuracy.  In fact, Plaintiffs make no allegations about the CRA Defendants' procedures at all.  *Cf. White v. Trans Union LLC*, No. 1:24-CV-324 (RDA/LRV), 2025 WL 409660, at *6 (E.D. Va. Feb. 5, 2025) (dismissing claim under § 1681e because "Plaintiffs make no allegations that Defendant TransUnion did not follow reasonable procedures; indeed, they make no allegations about Defendant TransUnion's

---

[8] As noted *infra* Section III.B., Plaintiffs' claims against Cassin and Brittain would fail for the same reasons.  However, the Court dismisses the claims against Cassin and Brittain for lack of personal jurisdiction.

[9] Trans Union takes issue with Plaintiffs' allegation that their credit report contained inaccurate information and argues that "[t]he alleged inaccuracy in this case appears to be based on a fabricated legal theory . . . consistent with a sovereign citizen theory that has been characterized by the courts as the 'vapor money theory.'"  ECF 17-1, at 7.  The Court observes that Plaintiffs' claim that they paid off "$264,040.18" of mortgage debt with "check and Legal Tender with silver coins," *see* ECF 1, at 7, is dubious at best.  Regardless, even accepting Plaintiffs' allegations as true that "Equifax, Experian, and TransUnion continued to report false information after the debt ha[d] been satisfied," *id.* at 10, the Court finds that Plaintiffs have failed to state a viable claim and need not address the potential "vapor money theory" underlying their allegations.

procedures at all").  Plaintiffs cannot make out a plausible § 1681e claim without alleging facts in support of this claim.

Plaintiffs' claims under § 1681i likewise fail.  While Plaintiffs allege that they disputed the accuracy of certain information reported by the CRA Defendants, ECF 1, at 16, Plaintiffs fail to set forth any facts to show that any of the CRAs failed to conduct a reasonable reinvestigation. Plaintiffs do not reference any CRA investigation at all, and instead assert that Nationstar, not the CRA defendants, failed to conduct an investigation of the disputed information.  *See* ECF 1, at 15 (alleging that the Nationstar Defendants do "not conduct a meaningful investigation, or an investigation at all, when [they] receive[] a notice of dispute").  As the complaint is devoid of any allegations regarding the CRA Defendants' procedures or (re)investigation of the alleged dispute, the FCRA claims against Trans Union, Equifax, and Experian must be dismissed.  *See Waller v. Experian Info. Sols., Inc.*, Civ. No. JKB-22-0668, 2022 WL 4279868, at *3 (D. Md. Sept. 15, 2022) (dismissing §§ 1681e and 1681i claims where the plaintiff did "not allege that Defendants did not follow reasonable procedures, nor d[id] she allege that they failed to conduct a reasonable reinvestigation").

### 4. Request for Fees

The CRA Defendants request attorney's fees pursuant to §§ 1681n and 1681*o* of the FCRA, which permit fees to be awarded to a prevailing party "[o]n a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment."  15 U.S.C. §§ 1681*o*(b), 1681n(c). Specifically, the CRA Defendants assert that Plaintiffs have brought this complaint in bad faith as "one of many" lawsuits "in which Plaintiffs attempt to harass defendants and take advantage of the judicial system."  ECF 17-1, at 9–10.  The CRA Defendants argue that Plaintiffs' history of litigation related to the loan on the Property demonstrates that they "[knew] that [they] had no

viable claim" and filed this complaint anyway, knowing it was "frivolous, unreasonable, or without foundation." *Id.* at 10 (citing *Angino v. Transunion, LLC*, No. 1:17-CV-954, 2019 WL 8163967, at *2 (M.D. Pa. Sept. 26, 2019)).

"The term bad faith, as it is ordinarily used in the attorney's fee context, requires a showing either that the party subjectively acted in bad faith—knowing that he had no viable claim—or that he filed an action or paper that was frivolous, unreasonable, or without foundation." *Alston v. Branch Banking & Tr. Co.*, No. GJH-15-3100, 2018 WL 4538538, at *3 (D. Md. Sept. 20, 2018) (citation modified) (quoting *Ryan v. Trans Union Corp.*, No. 99 C 216, 2001 WL 185182, at *5 (N.D. Ill. Feb. 26, 2001)). "In considering whether a filing is made in bad faith, the court will focus on the party's mental state at the time of the filing, regardless of whether the filing turned out to be baseless." *Id.* The burden of showing bad faith rests with the moving party. *Penshiaku v. Wells Fargo Bank, Nat'l Ass'n*, No. 5:20-CV-00014-M, 2020 WL 2841782, at *2 (E.D.N.C. June 1, 2020).

Here, the CRA Defendants have failed to meet their burden of showing that the complaint was brought in bad faith. First, the CRAs assert that "Plaintiffs' extensive litigation history demonstrates" Plaintiffs' knowledge that the complaint was filed in bad faith. ECF 17-1, at 10. However, the CRA Defendants fail to point to any examples from prior litigation to support this argument. Nor do they provide any supporting evidence to show that Plaintiffs' mental state reflected bad faith at the time of filing this complaint. Moreover, although the CRAs point to Plaintiffs' history of litigation over the related foreclosure action, the CRA Defendants also recognize that "Trans Union and its executives have only been named in the current litigation." ECF 17-1, at 10. This does not demonstrate a history of litigation in which "Plaintiffs [have] attempt[ed] to harass" Trans Union, or the other CRAs, as claimed. *Id.* As the CRA Defendants

have not sufficiently shown that the complaint was brought in bad faith, the Court denies the request for attorney's fees.

### B. Cassin and Brittain's Motion to Dismiss

Cassin and Brittain, executive and director for Experian PLC located in Dublin, Ireland,[10] move to dismiss the claims against them on the grounds that they were not properly served under Rule 12(b)(5), that the Court lacks personal jurisdiction over them under Rule 12(b)(2), and that Plaintiffs fail to state a claim under Rule 12(b)(6). ECF 36-1, at 3–10. As discussed, *supra* Section III.A.2, the Court agrees that Plaintiffs have failed to state a claim against Cassin and Brittain under Rule 12(b)(6) for the same reasons that Plaintiffs' claims against Cartwright, Cello, Begor, and Bindal fail. The Court also concludes that Plaintiffs failed to serve Cassin and Brittain and that the Court lacks personal jurisdiction over them.

1. The Court lacks personal jurisdiction over Cassin and Brittain because they were not properly served.

"Service of process, which is governed by Fed. R. Civ. P. 4, is a prerequisite to litigating in federal court. In its absence, a court lacks 'personal jurisdiction over the defendant.'" *Harris v. Johns Hopkins Health Sys. Corp.*, Civ. No. ELH-23-701, 2023 WL 3624733, at *2 (D. Md. May 23, 2023) (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). "Although the court can 'construe Rule 4 liberally' when the service of process, even if technically deficient, provided actual notice to the defendant, the 'plain requirements' for effecting service cannot be ignored." *Id.* (quoting *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006)); *see also Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 305 (4th Cir. 2016) ("Actual notice

---

[10] Cassin and Brittain are not affiliated with Experian Information Solutions, Inc., the entity against which this complaint is filed. ECF 36-1, at 4.

does not equate to sufficient service of process, even under the liberal construction of the rules applicable to a pro se plaintiff.").

While Cassin and Brittain received actual notice of the complaint, they assert that they were not properly served pursuant to Federal Rule of Civil Procedure 4(f), which governs service of process on an individual in a foreign country, or under applicable Maryland state law.  ECF 36-1, at 4–5.  Plaintiffs concede that they did not properly serve Cassin and Brittain but argue that dismissal is not warranted on this basis because "Plaintiffs were actively seeking guidance from the Secretary of State of Maryland and the case manager to obtain new summons for proper service on these international defendants."  ECF 39, at 2.  It is not clear what guidance the "Secretary of State of Maryland" or any "case manager" could provide regarding service of process on these foreign defendants.  Further, the Court notes that aside from the "summons returned executed" for Brittain at ECF 23 (which Plaintiffs now concede was improper), the docket neither reflects any attempted service on Cassin nor any further attempts at proper service on Brittain.  Accordingly, the Court finds that Plaintiffs have failed establish valid service, and [i]n [the absence of proper service, the Court lacks personal jurisdiction over" Cassin and Brittain.  *Harris*, 2023 WL 3624733, at *2.  As discussed below, Plaintiffs also fail to plead sufficient facts to establish personal jurisdiction over Cassin and Brittain.

### 2. Plaintiffs fail to otherwise establish personal jurisdiction over Cassin and Brittain.

"Absent consent, the exercise of personal jurisdiction must comport with the requirements of the Due Process Clause: valid service of process, as well as . . . minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice."  *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020) (internal quotation marks omitted) (quoting *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 228

(4th Cir. 2019)). "Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). In order for "a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.* (citing *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan,* 259 F.3d 209, 215 (4th Cir. 2001)). Maryland's long-arm statute is codified at Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 6-103(b). It authorizes "personal jurisdiction over a person, who directly or by an agent:"

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
>
> (5) Has an interest in, uses, or possesses real property in the State; or
>
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

CJP § 6-103(b). Under CJP § 6-103(a), "[i]f jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section." "Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Carefirst of*

*Maryland, Inc.*, 334 F. 3d at 396.  "Thus, [the] statutory inquiry merges with [the] constitutional inquiry."  *Id.* at 397.

"The Maryland long-arm statute . . . limits specific jurisdiction to cases where the cause of action arises from any act enumerated in the statute itself.  Thus, a plaintiff must identify a specific Maryland statutory provision authorizing jurisdiction."  *Parker*, 2024 WL 622077, at *4 (quoting *Johns Hopkins Health Sys. Corp. v. Al Reem Gen. Trading & Co.'s Rep. Est.*, 374 F. Supp. 2d. 465, 472 (D. Md. 2005)).  Here, Plaintiffs do not identify the specific statutory provision authorizing jurisdiction in their complaint or opposition.  *See id.* (noting the requirement can be satisfied in "a complaint or in opposition to a 12(b)(2) motion").  However, given Plaintiffs' allegation that Cassin and Brittain's "participat[e] in the debt collection reporting acts and practices of Experian," ECF 39, at 2, the Court will liberally construe Plaintiffs' pleading as asserting that jurisdiction arises under § 6-103(b)(1).

With respect to § 6-103(b)(1), "Maryland courts have construed the phrase 'transacting business' narrowly, requiring, for example, significant negotiations or intentional advertising and selling in the forum state."  *Cranford v. Tenn. Steel Haulers, Inc.*, Civ. No. ELH-17-2768, 2018 WL 3496428, at *5 (D. Md. July 20, 2018) (quoting *Aphena Pharma Sols.-Md. LLC v. BioZone Lab'ys, Inc.*, 912 F. Supp. 2d 309, 315 (D. Md. 2012)).  "Thus, 'several contacts related to the cause of action only tangentially' do not establish personal jurisdiction."  *Id.* (quoting *Stisser v. SP Bancorp, Inc.*, 174 A.3d 405, 428 (Md. 2017)).  Rather, "the plaintiff must 'show[ ] some purposeful act in Maryland in relation to one or more of the elements of plaintiff's cause of action.'"  *Id.* (quoting *Talegen Corp. v. Signet Leasing & Fin. Corp.*, 657 A.2d 406, 409 (Md. App. 1995)).

18

Under the constitutional analysis, there are "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017). "General jurisdiction permits the court to hear any and all claims against the defendant, regardless of where the claims arose or the plaintiff's citizenship." *Fidrych*, 952 F.3d at 131. It "may be exercised when the defendant has contacts with the forum jurisdiction that are 'so constant and pervasive as to render it essentially at home in the forum State.'" *Id.* at 131–32 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). For "an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG*, 571 U.S. at 137. Here, Plaintiffs do not appear to suggest that Cassin and Brittain are domiciled in Maryland or that the Court has general jurisdiction over these defendants. As noted, Plaintiffs argue that personal jurisdiction is proper based on Cassin and Brittain's "participat[ion] in the debt collection reporting acts and practices of Experian." ECF 39, at 2. Accordingly, the Court will confine its analysis to whether it has specific jurisdiction over Cassin and Brittain, based on Plaintiffs' allegation suggesting "the suit arise[s] out of or relate[s] to [Cassin and Brittain's] contacts" with Maryland. *Daimler*, 571 U.S. at 127 (alterations modified) (citation omitted).

### i. *Specific Jurisdiction*

"If [a] defendant does not have sufficient contacts to be at home in the forum, the court may exercise specific jurisdiction if the defendant has continuous and systematic contacts with the forum state and the claims at issue arise from those contacts with the forum state." *Fidrych*, 952 F.3d 132 (citing *Daimler AG*, 571 U.S. at 126–27). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb*, 582 U.S. at 264.

19

"The Fourth Circuit has formulated a three-part test for use in determining whether there is specific jurisdiction over a defendant. The three prongs are: '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Jones v. Mutal of Omaha Ins. Co.*, 639 F. Supp. 3d 537, 549 (D. Md. 2022) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)).  The first prong requires that "personal jurisdiction must be based on an individual's personal contacts with or purposeful availment of the forum state." *Harte–Hanks Direct Mktg./Balt., Inc. v. Varilease Tech. Fin. Group, Inc.,* 299 F.Supp.2d 505, 513 (D. Md. 2004).

Plaintiffs fail to satisfy the first prong of the inquiry as they "offer[] only speculation or conclusory assertions about [Cassin and Brittain's] contacts with [the] forum state." *Carefirst of Maryland, Inc.*, 334 F.3d at 402.  Plaintiffs plead nothing more than a boilerplate assertion that Cassin and Brittain "formulated, directed, controlled, had the authority to control, or participated in the debt collection reporting acts and practices of Experian"—the same assertion Plaintiffs repeat about each officer defendant in this action.  *See* ECF 1, at 3–6.  The complaint lacks any specific facts alleging that Cassin and Brittain had any contacts with Maryland sufficient to establish specific jurisdiction.  *Cf. Parker*, 2024 WL 622077, at *6 (finding no personal jurisdiction where the plaintiff failed to allege any facts suggesting that the defendant "purposefully availed himself of the privilege of conducting activities within Maryland").

Moreover, in response to Cassin and Brittain's arguments against personal jurisdiction, Plaintiffs merely repeat the assertion provided in the complaint and request "jurisdictional discovery to further establish [Cassin and Brittain's] contacts with the forum." ECF 39, at 2.  But

jurisdictional discovery is not appropriate here because Plaintiffs have not put forth *any* facts tending to show Cassin and Brittain had minimum contacts with Maryland. "[T]he decision of whether or not to permit jurisdictional discovery is a matter committed to the sound discretion of the district court." *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002). Courts appropriately deny jurisdictional discovery when a party offers only mere "speculation or conclusory assertions," or "bare allegations in the face of specific denials" regarding personal jurisdiction. *Carefirst of Maryland, Inc.*, 334 F.3d at 402. Here, Plaintiffs have presented no facts from which the Court could infer that it has personal jurisdiction over Cassin and Brittain. Accordingly, Plaintiffs' request for jurisdictional discovery is denied. All claims against Cassin and Brittain are dismissed.

### C.    The Nationstar Defendants' Motion to Dismiss

Plaintiffs assert all nine claims against the Nationstar Defendants. The Nationstar Defendants contend that dismissal is warranted because 1) the complaint fails to comply with Rule 8 pleading standards, 2) Plaintiffs' claims contesting the foreclosure sale of the Property are barred by *res judicata*, and 3) Plaintiffs fail to state a claim under the cited statutes. ECF 40-1, at 7–14. The Court concludes that certain of Plaintiffs' claims are barred by *res judicata* and that Plaintiffs have otherwise failed to state a claim.[11]

#### 1. Plaintiffs' TILA and FDCPA claims are barred by *res judicata*.

Nationstar asserts that "Plaintiffs' claims are barred by *res judicata* due to the Circuit Court [of Harford County]'s ratification of the foreclosure sale." ECF 40-1, at 8. Plaintiffs counter that the "true nature" of their claims "are primarily based on violations of" the FCRA and FDCPA

---

[11] Accordingly, the Court need not consider Nationstar's arguments for dismissal under Rule 8.

"and other federal consumer protection laws." ECF 42, at 6. Despite Plaintiffs' assertion, the Court agrees with Nationstar that certain of Plaintiffs' claims are barred by *res judicata*.

Under the doctrine of *res judicata*, a final judgment on the merits in an earlier decision precludes the parties from relitigating issues that were raised or could have been raised during that action. *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004). This doctrine applies when there is: (1) a final judgment on the merits in a prior lawsuit; (2) the claims in both the prior and the later lawsuit are part of the same transaction or the same core of operative facts; and (3) the parties are the same or in privity in the two suits. *See Covert v. LVNV Funding, LLC*, 779 F.3d 242, 246–47 (4th Cir. 2015); *see also Reid v. New Century Mortg. Corp.*, Civ. No. PX-18-233, 2018 WL 4538585, at *5 & n.11 (D. Md. Sept. 20, 2018) (noting that the Court "applies the substantive law on *res judicata* from the forum in which the prior judgment was entered" and that the elements of *res judicata* under Maryland and federal law are the same (italics added)).

The first requirement—identity or privity of parties—is met here. Plaintiffs Irvin Betch, Patricia Betch, and Arthur Wittenberg were the named defendants in the state foreclosure action.[12] *Id.* at 3. Moreover, "[s]ubstitute trustees, lenders, and successor holders of a mortgage are generally found to be in privity where they share 'the same right to foreclose on the subject mortgage.'" *Rawlings v. Bank of Am., N.A.*, Civ. No. BAH-24-1033, 2024 WL 5170860, at *4 (D. Md. Dec. 18, 2024) (quoting *Proctor v. Wells Fargo Bank, N.A.*, 289 F. Supp. 3d 676, 683 (D. Md. 2018)). The plaintiffs in the foreclosure action, Diane Rosenberg and Cristian Mendoza, were

---

[12] *See Diane Rosenberg, et al. v. Irvin Betch, et al.*, Civ. No. C-12-CV-20-000061 (Cir. Ct. Harford Cty. January 21, 2010) (Maryland Judiciary Case Search, http://casesearch.courts.state.md.us/casesearch/inquirySearch.jis (Under "Search By Case Number," enter case number "C12CV20000061"; then select "Search") (last visited Feb, 18, 2026).

substitute trustees hired to represent the legal interests of the Nationstar Defendants with respect to the Property and "enforce the power of the sale provision in the Deed of Trust." ECF 40-1, at 9; *see* ECF 40-7, at 6. Accordingly, the Nationstar Defendants are the same as the state court plaintiffs for *res judicata* purpose.[13] *See Jones v. Ward*, Civ. No. GJH-20-3225, 2021 WL 2861518, at *5 (D. Md. July 8, 2021) (concluding the substitute trustees were in privity with their law firm and the mortgage servicer that hired them to initiate the foreclosure action); *Womack v. Ward*, Civ. No. DKC-17-3634, 2018 WL 3729038, at *3 (D. Md. Aug. 6, 2018) (finding substitute trustees were the same party in interest for *res judiciata* purposes on a foreclosure action), *aff'd*, 755 F. App'x 262 (4th Cir. 2019).

The second element of *res judicata* is likewise satisfied, at least with respect to Plaintiffs' TILA and FDCPA claims. "Claims are part of the same cause of action when they arise out of the same transaction or series of transactions, or the same core of operative facts." *Knight v. Nationstar Mortg., LLC*, Civ. No. SAG-23-3502, 2024 WL 3046408, at *4 (D. Md. June 18, 2024) (quoting *Covert v. LVNV Funding, LLC*, 779 F.3d 242, 246 (4th Cir. 2015)). Here, the allegedly wrongful foreclosure on the Property underpins Plaintiffs' claims against the Nationstar Defendants. This Court has found FDCPA and TILA claims arising out of state foreclosure judgments barred under *res judicata*. *See Betskoff v. Diane S. Rosenberg & Assocs., LLC*, Civ. No. PWG-18-2133, 2019 WL 3869284, at *4 (D. Md. Aug. 16, 2019) (finding the plaintiff's FDCPA and state law claims barred where "the state court Foreclosure Action and the present case relate to the same transaction or occurrence: [the plaintiff]'s mortgage loan and subsequent loss of his Property through foreclosure"), *aff'd*, 796 F. App'x 814 (4th Cir. 2020); *Dickson v. Cohn,*

---

[13] The Court also observes that the named defendants in this action, Nationstar and Marshall, were both identified as interested parties in the state foreclosure action. ECF 40-7, at 2.

*Goldberg & Deutsch L. Firm*, Civ. No. PJM-09-937, 2010 WL 2559880, at *2 (D. Md. June 18, 2010) (barring Plaintiffs' TILA recission claim against a lender "because it relates to the judgment of the Circuit Court, which ratified the foreclosure sale").  Plaintiffs' FDCPA claim is premised on Plaintiffs' contention that the Nationstar Defendants lacked the legal authority to enforce the mortgage debt and foreclose on the Property.  *See* ECF 1, at 17 (alleging the Nationstar Defendants "used false representations concerning the character, amount, or legal status of a debt").  "Accordingly, the statutory claim[] arise[s] out of the same series of transactions as the transactions at issue in the foreclosure proceedings."  *Bullock v. Ocwen Loan Servicing, LLC*, No. CIV. PJM 14-3836, 2015 WL 5008773, at *5 (D. Md. Aug. 20, 2015).  Similarly, Plaintiffs' TILA claim, alleging that the Nationstar Defendants "failed to provide required disclosures" and "engaged in deceptive lending practices" are challenges that could have been raised in the state court foreclosure action.  *See* ECF 1, at 18.  *See Prudencio v. Cap. One, N.A.*, Civ. No. PWG-16-2693, 2016 WL 6947016, at *3 (D. Md. Nov. 28, 2016) (finding claims relating to a note and deed of trust on a property "and the foreclosure action that resulted when Plaintiffs failed to make payments" could have been raised in the foreclosure action).  As such, "the state court foreclosure action and the present case relate to the same transaction or occurrence, and" Plaintiffs' TILA and FDCPA claims "were or could have been brought in the state action."  *Jones*, 2021 WL 2861518, at *6.

With respect to the TILA and FDCPA claims, the third *res judicata* element is plainly met, as the foreclosure sale of the Property was ratified on November 18, 2021, and final judgment was entered on February 10, 2022.  ECF 40-7, at 11, 15.  Accordingly, the Court concludes that Plaintiffs' FDCPA and TILA claims arising out of the foreclosure action are barred by *res judicata*.

However, whether Plaintiffs' FCRA claims are barred by *res judicata* is not as clear. Plaintiffs' FCRA claims appear to be predicated on an allegation that Plaintiffs did not actually owe the debt leading to the foreclosure sale of the Property.  *See* ECF 1, at 7 (alleging that "[a]lthough Tender has been issued in full to extinguish the Consumer Credit Transaction in favor of [Nationstar], they continue to provide false information to Trans Union LLC, Experian, and Equifax, Inc").  But Plaintiffs also appear to raise an FCRA claim arising out of a dispute regarding an "account belong[ing] to someone else" or Plaintiffs' claim that a certain account "is not [theirs]." ECF 1, at 15.  Without additional facts, the Court cannot conclude that Plaintiffs' FCRA claims necessarily arise out of the foreclosure action such that they would be barred by *res judicata* and therefore will not dismiss the claims for that reason.  However, as discussed in the following section, Plaintiffs' FCRA claims will be dismissed for a different reason.

### 2. The rest of Plaintiffs' claims are dismissed under Rule 12(b)(6).

#### i.    *Plaintiffs' FCRA claims fail.*

"In addition to the duties it imposes on CRAs, FCRA also imposes duties on 'furnishers of information.'"  *Id.* at 147–48.  "While the statute does not explicitly define 'furnishers' of credit information, '[t]he most common . . . furnishers of information are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies.'"  *Himmelstein v. Comcast of the Dist., L.L.C.*, 931 F. Supp. 2d 48, 52 (D.D.C. 2013) (internal quotation marks omitted) (quoting *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 35 n.7 (1st Cir. 2010)).  Nationstar does not dispute that it is a furnisher of information under the FCRA.  *See* ECF 40-1, at 11 ("Under section 1681s-2(b), furnishers of credit information like Mr. Cooper are required to conduct a reasonable investigation of their records after receiving notice of a consumer dispute from a credit reporting agency.").

As noted, Plaintiffs specifically cite § 1681s-2(a)(3), and § 1681s(a)(1) as the bases for their FCRA claims, which do not provide a private right of action.  *See supra* n.6.  However, § 1681s-2(b) provides a private right of action against furnishers of information, *see Saunders*, 526 F.3d at 148–47, so to the extent Plaintiffs intended to bring a claim under this section, and in the spirit of liberal construction, the Court will analyze the viability of such a claim here.

 "To state a claim under § 1681s-2(b), a plaintiff must plead '(1) that [they] notified the CRAs of the disputed information; (2) that the CRAs notified [the defendant] of the dispute; and (3) that [the defendant] then failed to investigate and modify the inaccurate information.'"  *Tyson v. Cap. One, N.A.*, Civ. No. DLB-25-1794, 2025 WL 3166795, at *2 (D. Md. Nov. 13, 2025) (alterations in *Tyson*) (quoting *Davenport v. Sallie Mae, Inc.*, 124 F. Supp. 3d 574, 581 (D. Md. 2015)), *aff'd*, 623 F. App'x 94 (4th Cir. 2015).  "[T]o state a claim under § 1681s-2 of the FCRA, a plaintiff 'must allege facts that, if true, indicate an inaccuracy or incompleteness in their credit report that is objectively and readily verifiable.'"  *Cooper v. I.Q. Data Int'l, Inc.*, Civ. No. RDB-24-2120, 2025 WL 1827956, at *7 (D. Md. July 2, 2025) (quoting *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 253 (4th Cir. 2025)).  "At the pleading stage, the Court need only determine whether [the plaintiffs'] factual allegations would be 'objectively and readily verifiable *by the furnisher*.'"  *Id.* at *8 (emphasis in *Cooper*) (alteration added) (quoting *Roberts*, 131 F.4th at 252).

Here, the Court is unable to discern whether any inaccuracy would be verifiable by Nationstar, because Plaintiffs do not specify the information that they purportedly disputed with the CRAs.  Neither do Plaintiffs provide the date that any allegedly inaccurate information was disputed, or any other facts for the Court to ascertain whether any inaccuracy or incompleteness existed in Plaintiffs' credit report.  Plaintiffs instead generally assert that "Equifax, Experian, and TransUnion w[ere] notified by the consumer at an address specified by them, that the specific

information was inaccurate."  ECF 1, at 14.  Without providing further detail, Plaintiffs fail to plausibly allege that they notified the CRAs of any disputed inaccuracies that would be objectively and readily verifiable.  *Cf. Howell v. Upgrade, Inc.*, No. 6:24-CV-04228-JDA-WSB, 2025 WL 1330516, at *7 (D.S.C. Jan. 15, 2025) (finding plaintiff failed to state a claim under § 1681s-2 where "[t]he allegations supporting Plaintiff's FRCA claim against Defendant [we]re stated in the most general terms, providing no dates of when the relevant events occurred, nor explaining what inaccurate information was included in Defendant's reporting to a CRA"), *reconsideration denied*, No. 6:24-CV-04228-JDA, 2025 WL 1559527 (D.S.C. June 3, 2025*); but cf. Cooper*, 2025 WL 1827956, at *8 (FCRA claim sufficiently alleged where the plaintiff provided "the alleged delinquent amount; the genesis of the alleged delinquent account; her rental address and landlord; the sections of Baltimore City Code relevant to Hudson Homes's licensing; the date Hudson Homes sued her; and the amount of the original suit").

Generally, "a plaintiff triggers a furnisher's duty to investigate by notifying the CRA of a dispute."  *Cooke v. Carrington Mortg. Servs.*, Civ. No. TDC-18-0205, 2018 WL 6323116, at *10 (D. Md. Dec. 3, 2018) (citing *White v. GreenTree Serv., LLC,* 118 F.Supp. 3d 867, 874–75 (D. Md. 2015)).  However, given that Plaintiffs fail to plausibly allege that they notified a CRA of any dispute, they in turn also fail to allege that Nationstar's duty to investigate under the FCRA was triggered.  And although Plaintiffs allege that Nationstar "was notified by the Plaintiffs . . . that specific information was inaccurate," ECF 1, at 14, "notice by a consumer directly to the furnisher of the information does not trigger the furnisher's duties under section 1681s-2(b)."  *Campbell v. Wells Fargo Bank, N.A.*, 73 F. Supp. 3d 644, 651 (E.D.N.C. 2014) (citing *Craighead v. Nissan Motor Acceptance Corp.*, No. 1:10CV981 JCC JFA, 2010 WL 5178831, at *4 (E.D. Va. Dec. 14,

2010), *aff'd*, 425 F. App'x 197 (4th Cir. 2011)).  Accordingly, Plaintiffs have failed to plausibly allege any FCRA claim against the Nationstar Defendants.[14]

*ii.     Plaintiffs' remaining claims likewise fail.*

Plaintiffs' remaining claims against the Nationstar Defendants, including breach of fiduciary duty (Count I), securities fraud (Count II), violation of the FTC Act (Count VII), and violation of 12 U.S.C. § 1431 (Count VIII) likewise fail as Plaintiffs have not stated any cognizable claims.  *See* ECF 1, at 1, 17.

First, the Nationstar Defendants point out that in support of Plaintiffs' breach of fiduciary duty claim, "Plaintiffs cite inapplicable statutes," including 41 U.S.C. § 6503 and 29 U.S.C. § 1109.  ECF 40-1, at 12.  41 U.S.C. § 6503 pertains to "breach of a contract with an agency of the United States for the manufacturing and furnishing of materials," and 29 U.S.C. § 1109 "covers breaches of employment plans."  *Id.*  The Court agrees that the statutes cited by Plaintiffs are inapplicable and do not give rise to any breach of fiduciary duty claim here.  *See* 29 U.S.C. § 1101(a) ("This part shall apply to any employee benefit plan . . . ."); *see also* 41 U.S.C. § 6503(a) ("This section applies in case of breach or violation of a representation or a stipulation included in a contract under section 6502 of this title" where § 6502 includes "[a] contract made by an agency of the United States . . . .").  The Court also observes that Plaintiffs appear to assert a breach of fiduciary duty claim arising out of the Federal Reserve Act.  *See* ECF 1, at 22 ("The Trustee of the financial instrument has fiduciary obligations under the Federal Reserve Act, Sections 16 and 29.").  But "Sections 16 and 29 of the Federal Reserve Act . . . do not allow for a private cause of action."  *Williams v. Bank of Am.*, Civ. No. TDC-24-3245, 2025 WL 2196249, at *4 (D. Md. Aug.

---

[14] To the extent Plaintiffs intended to bring a claim against the Nationstar Defendants under §§ 1681e or 1681i of the FCRA, those claims would likewise fail because, as noted *supra*, those sections apply only to CRAs and not furnishers of information like Nationstar.  *See Saunders*, 526 F.3d at 148.

1, 2025).  Plaintiffs do not respond to Nationstar's argument or advance any affirmative arguments with respect to the breach of fiduciary duty claim, which the Court will treat as a concession that dismissal of the breach of fiduciary duty claim is warranted.  *See, e.g.*, *United Supreme Council v. United Supreme Council of Ancient Accepted Scot. Rite for 33 Degree of Freemasonry*, 329 F. Supp. 3d 283, 292 (E.D. Va. 2018) ("Failure to respond to an argument made in a dispositive pleading results in a concession of that claim."); *Coomes v. Moran*, Civ. No. ELH-22-02639, 2025 WL 2106739, at *39 (D. Md. July 28, 2025) ("I need not spill ink to consider contentions that are waived.").

Plaintiffs' claims of securities fraud under 18 U.S.C. § 1348 (Count II), violation of the FTC Act under 15 U.S.C. § 45(a) (Count VII), and violation of 12 U.S.C. § 1431 (Count VIII) also fail as none of these statutes provide a private cause of action.  18 U.S.C. § 1348 is a criminal statute and, as is well established, "[u]nless there is a clear [legislative] intent to provide a civil remedy, a plaintiff cannot recover civil damages for an alleged violation of a criminal statute." *United States ex rel. Angel v. Scott*, 697 F. Supp. 3d 483, 490 (E.D. Va. 2023) (alteration in original) (quoting *Brown v. Clements*, No. 15-cv-104, 2015 WL5677296, at *9 (E.D. Va. Sept. 23, 2015)).  "Federal rights of action, like substantive federal law, 'must be created by Congress'" by an unambiguous statute.  *McKenzie-El v. Internal Revenue Serv.*, Civ. No. ELH-19-1956, 2020 WL 902546, at *14 (D. Md. Feb. 24, 2020) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).  "A bare criminal statute provides for no express civil remedy."  *Scott*, 697 F. Supp. 3d at 490 (quotation and citation omitted).  Accordingly, this Court has before held that "18 U.S.C. § 1346 . . . is a criminal statute that does not create a private right of action." *Waheed v. Maryland*, Civ. No. GLR-20-1931, 2021 WL 4942674, at *3 n.3 (D. Md. Oct. 22, 2021) (citing *Smith v. Spears*, No. CV 2:17-3384-PMD-BM, 2018 WL 4523201, at *4 (D.S.C. Feb. 8, 2018) (finding

that "courts considering civil actions invoking 18 U.S.C. §§ 1346 and 1347 have found that these statutes also do not provide a private cause of action" and citing cases))), *aff'd as modified sub nom. Waheed v. Off. of Comptroller*, No. 21-2293, 2022 WL 910614 (4th Cir. Mar. 29, 2022).  The other two statutes invoked by Plaintiffs, while not criminal statutes, also do not provide any private cause of action.  *See McGagh v. Cooper*, Civ. No. PX-19-1184, 2019 WL 5538055, at *2 (D. Md. Oct. 25, 2019) (noting that 15 U.S.C. § 45 "does not provide a private right of action to an individual plaintiff"); *Vaughn v. Ally Fin., Inc.*, No. 1:24-CV-6, 2024 WL 4349088, at *3 (M.D.N.C. Sept. 30, 2024) (explaining that 12 U.S.C. § 1431 "explains the 'powers and duties of banks'" and "does not provide a private cause of action").

Accordingly, Plaintiffs' FCRA claims against the Nationstar Defendants (Counts III, IV, and V) are dismissed without prejudice.  The remainder of Plaintiffs' claims that are barred by *res judicata* or otherwise do not state a cognizable claim under the cited statutes are dismissed with prejudice.  *Cf. Reid v. New Century Mortg. Corp.*, Civ. No. PX-18-233, 2018 WL 4538585, at *6 (D. Md. Sept. 20, 2018) (dismissing with prejudice claims barred under *res judicata* arising out of a foreclosure action).

D.    **Plaintiffs' Motions**

1.    Plaintiffs' motion to strike, for leave to file surreply, and for prompt ruling (ECF 74)

In the motion docketed at ECF 74, Plaintiffs make three requests of the Court.  First, they argue that Defendants' assertions that Plaintiffs' claims arise out of a sovereign citizen "vapor money theory" should be stricken under Federal Rule of Civil Procedure 12(f), as this characterization "serves only to prejudice this Court against Plaintiffs."  ECF 74, at 5.  Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from any pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  A motion to strike is

viewed with disfavor "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (internal citations and quotations omitted).  The Nationstar, Trans Union, and Equifax Defendants all correctly argue that Rule 12(f) does not apply to their motions to dismiss.  ECF 75, at 2; ECF 76, at 4.  Plaintiffs concede that Rule 12(f) does not apply to motions but ask the Court to "exercise its inherent authority" and grant the motion to strike anyway.  *See* ECF 78, at 4 ("Nationstar correctly notes that Rule 12(f) applies to 'pleadings' and not to motions . . . Plaintiffs do not dispute that formal point.").  Defendants' arguments about Plaintiffs' sovereign citizen "vapor money theory" are contained in their respective motions to dismiss, *see* ECF 17-1, at 7–8; ECF 40-1, at 5 n.4, and motions, memoranda, and the exhibits attached to them are not pleadings subject to a motion to strike.  *Tepeyac v. Montgomery Cnty.*, 779 F. Supp. 2d 456, 460 (D. Md. 2011) ("Under Rule 7(a), motions, memoranda, and the exhibits attached to them are not pleadings. . . . Rule 12(f) may only address the papers listed in Rule 7(a)."), *rev'd in part on other grounds*, 683 F.3d 591 (4th Cir. 2013), *aff'd on reh'g en banc sub nom.*, *Centro Tepeyac v. Montgomery Cnty.*, 772 F.3d 184 (4th Cir. 2013).  Accordingly, Plaintiffs' motion to strike is denied.

Second, Plaintiffs request leave to file a surreply over ten months after Defendants' motions to dismiss were fully briefed.  *See* ECF 74, at 11 (filed on January 30, 2026).  Surreplies are generally disfavored under the Local Rules of this Court.  *See* Loc. R. 105.2(a) (D. Md. 2025) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."); *see also Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 351 (D. Md. 2015).  Surreplies may only be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."  *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D.

Md. 2003), *aff'd*, 85 Fed. App'x 960 (4th Cir. 2004).  Plaintiffs argue that a surreply is necessary because Defendants raised new arguments in their reply briefs including "[e]xpanded res judicata claims based on foreclosure history," "[n]ew assertions about prior litigation and 'vapor money,'" and "[f]ee-shifting arguments under §§ 1681n(c), 1681o(b)."  ECF 74, at 12.  Plaintiffs did not attach a proposed surreply to the motion.

A surreply is not warranted here because all of the arguments identified by Plaintiffs were raised in Defendants' motions to dismiss and Plaintiffs had ample opportunity to counter them.  The Nationstar Defendants raised their *res judicata* arguments in their motion to dismiss, *see* ECF 40, and did not raise any new arguments with respect to that topic in their reply brief, *see* ECF 51, at 2.  The same is true of arguments regarding the "vapor money theory" and fee shifting, which were all raised in Trans Union's motion to dismiss, *see* ECF 17, and joined by the Equifax Defendants and Experian, *see* ECFs 33 and 38.  As Plaintiffs have not identified any new matters raised in any Defendants' reply brief, Plaintiffs' request to file a surreply is denied.

Plaintiffs' January 30, 2026, motion also requests prompt ruling on the pending motions to dismiss.  As the Court is now ruling on the pending motions to dismiss, the Court will deny this request as moot.  The Court notes that this case was decided in due course, after thorough consideration of all relevant filings, and not as a result of Plaintiffs' request.

Finally, because Plaintiffs' complaint is being dismissed in its entirety, their motion for summary judgment, ECF 35, is denied as moot.  *See, e.g.*, *Knickman v. Prince George's Cty.*, 187 F. Supp. 2d 559, 567 (D. Md. 2002) ("All of Plaintiff's claims have been dismissed, therefore, her motion for summary judgment is moot."); *see also Beatty v. BAC Home Loans Servicing, LP*, Civ. No. RDB 12-3188, 2013 WL 3868098, at *5 (D. Md. July 24, 2013) (denying as moot pending motion for default judgment when all claims were dismissed).

## IV.    <u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' motions to dismiss, ECFs 17, 36, and 40, as well as the motions for joinder, ECFs 33 and 38, are GRANTED, and the complaint is dismissed. Plaintiffs' motions at ECF 35 and ECF 74 are DENIED.  The Court will direct the Clerk to CLOSE the case.

A separate implementing order will issue.


Dated: <u>February 24, 2026</u>                               <u>            /s/            </u>
                                                            Brendan A. Hurson
                                                            United States District Judge